No. 50,966

STATE OF KANSAS, *Appellee,* v. SIDNEY E. BRYANT, *Appellant.*

(607 P.2d 66)

Opinion filed March 1, 1980.

*Christopher J. Redmond,* of Wichita, argued the cause and was on the brief for the appellant.

*Stuart W. Gribble,* assistant district attorney, argued the cause, and *Robert T. Stephan,* attorney general, and *Vern Miller,* district attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

PRAGER, J.: This is a direct appeal in a criminal action in which the defendant, Sidney E. Bryant, was convicted of aggravated robbery (K.S.A. 21-3427), and given a mandatory sentence under K.S.A. 1978 Supp. 21-4618. The evidence in the case was undisputed that on November 27, 1978, the Sonic Drive-In in Wichita was robbed by three black males. One of the robbers had a gun. The only real factual issue for the jury to determine was the identity of the defendant as one of the robbers.

The State's evidence showed that the robbery took place at about 12:10 p.m. on November 27, 1978. Jerald Peck, the manager of the drive-in, noticed three black males enter the building. He then heard a loud noise which sounded like either a firecracker or a gunshot. A voice then demanded money, stating that it was a holdup. One of the men jumped behind the counter, taking

money in a total amount of $3600. Peck did not actually see a firearm. He concluded that the men were armed because of the earlier noise. This witness positively identified the defendant as one of the robbers. Charlotte Schneider, an employee, observed a gun in the possession of one of the robbers who, in her opinion, was shorter than 5´7´´. She was unable to identify any of the robbers. The State's final witness, Isaac Stewart, admitted his participation in the robbery. Stewart testified that it was the defendant who used Stewart's gun at the scene. The two of them, along with Willie Diller and another man, went to the drive-in. According to Stewart, as the robbers entered the building, the defendant demanded money and brandished the gun which accidentally discharged, hitting the defendant's foot. That was the noise heard by the manager. Diller jumped behind the counter, took the money, and the three robbers then fled. The testimony of Stewart that the defendant had accidentally shot himself in the foot was corroborated by Dr. Nancy Nowlin who testified that, on examination of defendant's foot, she observed a small scar close to the toe. The defendant's witnesses testified to an alibi defense. According to them, the defendant was home in bed and sick at the time of the robbery. Following his conviction, the defendant brought an appeal to this court, claiming trial errors.

The first point raised on the appeal is that the trial court abused its discretion in permitting the State to endorse the name of Isaac Stewart as an additional witness on the day of the trial. The original information in the case was filed on January 8, 1979. The defendant's preliminary hearing was held on January 22. On January 24 the police officers took a taped statement from Isaac Stewart. An amended information was filed on January 31, 1979. The case was called for trial on February 20, 1979. On that day at 11:30 a.m., Thomas J. Weilert, an assistant district attorney, was assigned the case. In talking with one of the police officers, Weilert first became aware of the taped statement of Isaac Stewart. Weilert immediately notified defense counsel of the existence of the tape and his intent to move for the late endorsement of Isaac Stewart as a witness in the case. Prior to the commencement of voir dire, the State filed a motion requesting the late endorsement. The trial court sustained the motion and permitted the endorsement, provided defense counsel was given an opportunity to read a copy of the transcript and hear the tape and further to be

given an opportunity to interview the witness, if he so desired. Counsel for the defendant objected to the late endorsement of the witness. From the record, it appears that the district attorney's office did not have knowledge of the tape's existence prior to the day the case was set for trial. During the discussions about the late endorsement, the State suggested a continuance of the case. Defense counsel, after hearing the tape and interviewing the witness, did not request a continuance of the trial to a later date.

Under all of the circumstances, we have concluded that the trial court did not abuse its discretion in permitting the late endorsement. K.S.A. 1978 Supp. 22-3201(6) has been construed to confer broad discretionary power on the trial court in allowing a late endorsement. A trial court's order permitting a late endorsement of a witness is not to be overturned absent an abuse of discretion. The test is whether the defendant's rights have been prejudiced. *State v. White & Stewart,* 225 Kan. 87, 91, 587 P.2d 1259 (1978). This court will not condone surprise caused by the intentional withholding of the name of a witness as a part of the prosecution's trial strategy. *State v. Stafford,* 213 Kan. 152, 164, 515 P.2d 769 (1973), *modified* 213 Kan. 585, 518 P.2d 136 (1974). The purpose of the endorsement requirement is to prevent surprise to the defendant and to give him an opportunity to interview and examine the witnesses for the prosecution in advance of trial. *State v. Stafford,* 213 Kan. at 164. The trial court commits reversible error in allowing a late endorsement when surprise prevents "a fair preparation of his defense." *State v. Wilson & Wentworth,* 221 Kan. 359, 559 P.2d 374 (1977). Accordingly, this court has traditionally required the defendant not only to object to the late endorsement but to request and be denied a continuance before a late endorsement will constitute reversible error. See for example, *State v. Wilson & Wentworth,* 221 Kan. at 365.

The record discloses that the prosecutor twice stated to the court that there would be no objection to a continuance, if the defense counsel thought it was necessary to prepare his defense. Defense counsel indicated that he would confer with his client to determine whether a continuance was desirable and did so. He did not thereafter request a continuance. Under all the circumstances, we cannot say that defense counsel's preparation for the trial was impaired since he apparently needed no additional time to prepare. We also note that defense counsel vigorously cross-

examined Isaac Stewart and brought to the jury's attention certain discrepancies to impeach his testimony.

The defendant's second point is that the trial court erred in failing to instruct the jury that it should consider with caution the uncorroborated testimony of an accomplice witness. Specifically, defense counsel requested PIK Crim. 52.18. This court has required a cautionary instruction when the testimony of an accomplice is uncorroborated. *State v. Moody,* 223 Kan. 699, 576 P.2d 637, *cert. denied* 439 U.S. 894 (1978); *State v. Wood,* 196 Kan. 599, 604, 413 P.2d 90 (1966). Although some discrepancies exist between the testimony of the various witnesses, we cannot say that the testimony of Isaac Stewart was uncorroborated. The manager, Peck, identified defendant as one of the robbers and further testified that he heard a loud noise that sounded like a gunshot immediately prior to the robbery. Mrs. Schneider was unable to identify the defendant but did testify that one of the robbers had a gun. As indicated above, there was evidence from which it could be inferred that the defendant had suffered a gunshot wound to his foot. Under all the circumstances, it cannot be said that Isaac Stewart's testimony was uncorroborated to the extent it was error for the trial court to fail to give the cautionary instruction. See *State v. Parrish,* 205 Kan. 178, 468 P.2d 143 (1970).

The defendant next maintains that the trial court erred in sentencing the defendant to a mandatory sentence under K.S.A. 1978 Supp. 21-4618, because there was insufficient evidence to establish that the defendant used a firearm in the commission of the robbery. In *State v. Taylor,* 225 Kan. 788, 795, 594 P.2d 211 (1979), this court defined the scope of review of sentencing under K.S.A. 1978 Supp. 21-4618 to be limited to whether there was competent evidence that the defendant used a firearm when committing the robbery. In this case there was competent evidence that the defendant was in possession of a firearm during the robbery. That evidence is discussed earlier in this opinion. We find no merit in this contention.

As his final point, the defendant contends that the trial court erred in failing to grant him a new trial because of the recantation by Isaac Stewart of his trial testimony and, further, that the trial court should have brought the defendant back from the penitentiary for the hearing on his motion for a new trial. The factual

circumstances surrounding this point are as follows: The defendant's trial commenced on February 20, 1979, and the verdict of guilty was returned by the jury on February 23, 1979. On March 20, 1979, the trial court considered the defendant's motion for judgment of acquittal or in the alternative for a new trial and overruled the motion. The court immediately imposed sentence. On April 2, 1979, defense counsel filed a motion for a new trial for newly discovered evidence, based upon a letter from Isaac Stewart to Judge Ballinger in which Stewart denied the truth of his trial testimony. The substance of Stewart's letter was that the defendant Bryant had not been involved in the robbery and that he, Stewart, had lied in so testifying. At the time the letter was received, Isaac Stewart was being held in the Sedgwick County jail. The trial court promptly provided a copy of the letter to each counsel.

On April 17, Judge Ballinger ordered Stewart to be brought before the court to give his version of the contents of the letter. Defense counsel appeared at this inquiry, but defendant Bryant was not personally present. The trial court made it clear that the proceeding was to be held as a preliminary inquiry to see what Stewart had to say about the letter and, depending upon what his testimony might be, the court would then determine whether a hearing should be held on the defendant's motion for a new trial. Isaac Stewart took the stand and was fully examined by defense counsel. Having identified the letter as written by him, Stewart testified unequivocally that he wrote the letter because the defendant Bryant had threatened to kill him if he did not write it. The letter was written the night before defendant Bryant was taken to Hutchinson. Stewart testified that everything he had said in the letter was false and that the letter had originally been prepared by the defendant Bryant and that he, Stewart, had copied it in his own handwriting. Stewart reaffirmed his testimony that Bryant had possessed the gun at the robbery and stated that his testimony would basically be the same as he had presented at the trial. The witness further stated that five of his cellmates had been present when Bryant threatened him. Among the names mentioned was one Johnny Wilson. Following the presentation of this testimony, the court noted that defendant's motion for a new trial was based solely upon the State's primary witness's recantation of his testimony and that the witness had

repudiated his recantation. The court then observed that Stewart's testimony on the stand did not change anything that Stewart had previously testified to at the trial. Since the witness had not recanted his testimony, the trial court found no basis for granting a rehearing on the defense's motion for a new trial and overruled the motion.

On May 21, 1979, defense counsel moved for another hearing on the motion and for an order directing the defendant, Isaac Stewart, and Johnny Wilson to be brought before the court. According to defense counsel, Johnny Wilson was expected to testify that he was in the same cell as Stewart and that Bryant had not threatened or otherwise coerced Stewart to write the letter. This motion was considered by the court on June 12, 1979, and denied. The basis of the court's ruling was that it was unnecessary to reconsider the motion since Stewart's testimony had not in fact been recanted.

On these facts, the defendant now claims that he was denied his constitutional and statutory right to confront the witnesses against him. In support of his position, defendant relied on K.S.A. 22-3405, which provides in part as follows:

"22-3405. Presence of defendant. (1) The defendant in a felony case shall be present at the arraignment, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by law."

K.S.A. 22-3501 provides that the court on motion of defendant may grant a new trial to him if required in the interest of justice. That statute further provides that a motion for a new trial based on the ground of newly discovered evidence may be made within two years after final judgment. A motion for a new trial based on other grounds may be filed within ten days after the verdict or finding of guilty or within such further time as the court may fix. The issue presented here is whether the defendant is entitled to be present, as a matter of right, at a hearing on his motion for a new trial filed after the imposition of sentence, where the ground asserted is newly discovered evidence. We have concluded that the presence of the defendant at such a hearing is a matter resting within the sound discretion of the trial court.

The majority view throughout the United States is that the presence of a convicted defendant is not required at a hearing on a postverdict motion for a new trial. 21 Am. Jur. 2d, Criminal Law

§ 308; Annotation at 69 A.L.R.2d 835. The rationale of the majority rule is that the trial ends when a verdict has been rendered, that any right which an accused may have to be present at proceedings following indictment continues only during the pendency of the trial, and that a defendant, once convicted, cannot expect to be present at postconviction motions. A motion for a new trial based upon newly discovered evidence, filed after the imposition of sentence, is comparable to the procedure provided under K.S.A. 60-1507. In proceedings under 60-1507, the trial court normally conducts a preliminary inquiry to determine whether the claims asserted in the motion are substantial, before granting a full evidentiary hearing and requiring the petitioner to be present. Such a preliminary inquiry without the presence of the defendant has been upheld by the United States Supreme Court where a defendant pursues the postconviction remedy provided by 28 U.S.C.A. § 2255. See *Sanders v. United States,* 373 U.S. 1, 21, 10 L. Ed. 2d 148, 83 S.Ct. 1068 (1963).

It is not unusual for a State's primary witness, who has been granted immunity, to recant his testimony presented at the trial of an accomplice charged with the same crime. It is also quite common for such a witness to repudiate his recantation. The judicial attitude is that a recantation should be "looked upon with the utmost suspicion." *United States v. Troche,* 213 F.2d 401, 403 (2nd Cir. 1954); 2 Wright, Federal Practice & Procedure: Criminal § 557, pp. 526-527 (1969).

We cannot fault the procedure followed by the trial court in this case. After receiving a letter from Isaac Stewart recanting his testimony at the trial, the court promptly delivered a copy of the letter to the prosecutor and to defense counsel. Defense counsel filed a motion for a new trial for newly discovered evidence based upon the letter. The trial court then brought the witness into court, where the witness was examined by defense counsel. The witness Stewart repudiated his recantation and stated that his trial testimony was the truth. There was no prior request made by the defendant to be personally present at this preliminary inquiry. Upon the repudiation of the witness's recantation, the trial court promptly overruled the motion for a new trial since it was shown to be without foundation or substance. Thus a full blown hearing in the matter was not required. We cannot say that the trial court abused its discretion in refusing to grant the defendant

a further evidentiary hearing with an opportunity to be present.

We wish to emphasize we are not holding that a trial court has an unbridled discretion to deny a defendant an evidentiary hearing on a motion for a new trial based upon newly discovered evidence where there is substantial evidence to support the motion. We are simply holding that, under the circumstances of this case, the trial court did not abuse its discretion.

In *State v. Johnson,* 222 Kan. 465, 565 P.2d 993 (1977), the rules for granting a new trial for newly discovered evidence were stated as follows:

"The granting of a new trial for newly discovered evidence is in the trial court's discretion. (*State v. Larkin,* 212 Kan. 158, 510 P.2d 123, cert. den. 414 U.S. 848, 38 L.Ed.2d 95, 94 S.Ct. 134.) A new trial should not be granted on the ground of newly discovered evidence unless the evidence is of such materiality that it would be likely to produce a different result upon re-trial. (*State v. Hale,* 206 Kan. 521, 479 P.2d 902.) The credibility of the evidence offered in support of the motion is for the trial court's consideration. (*State v. Anderson,* 211 Kan. 148, 505 P.2d 691; *State v. Larkin,* supra.) The burden of proof is on defendant to show the alleged newly discovered evidence could not with reasonable diligence have been produced at trial. (*State v. Lora,* 213 Kan. 184, 515 P.2d 1086; *State v. Arney,* 218 Kan. 369, 544 P.2d 334.) The appellate review of an order denying a new trial is limited to whether the trial court abused its discretion. (*State v. Campbell,* 207 Kan. 152, 483 P.2d 495; *State v. Anderson,* supra.)" (p. 471.)

We find that the district court did not abuse its discretion in refusing to grant the defendant a new trial for newly discovered evidence.

The judgment of the district court is affirmed.